2009 VT 109

### Michael GARBITELLI v. TOWN OF BROOKFIELD

[987 A.2d 327]

Nos. 08-412 & 08-413

¶ 1. November 3, 2009. Taxpayer appeals from decisions of the Vermont State Appraiser upholding the Town of Brookfield's reappraisal of two parcels of land. We affirm.

¶ 2. In June 2007, the Town of Brookfield completed a town-wide appraisal of properties for the 2007 Brookfield Grand List. Two properties owned by taxpayer were included in this assessment: a ranch-style dwelling located at 1506 West Street (the 1506 parcel) and another dwelling located at 1680 West Street (the 1680 parcel). Taxpayer refused to allow the Vermont appraisal representative or town listers onto the premises to inspect the properties. The Brookfield Board of Listers initially appraised the 1506 parcel at $248,900 and the 1680 parcel at $1,921,900. After taxpayer filed timely grievances with regard to the value assigned to each parcel, the Brookfield Board of Listers reduced the appraised value of the 1506 parcel to $236,800 and reduced the appraised value of the 1680 parcel to $1,691,800. Taxpayer appealed both appraisals to the board of civil authority (BCA).

¶ 3. A hearing was held before the BCA on August 15, 2007, at which time the BCA attempted to schedule an inspection of the properties pursuant to 32 V.S.A. § 4404(c). Taxpayer again refused to allow an interior inspection. Because it could not inspect the parcel, the BCA kept the assessment of the 1506 parcel at $236,800 and assessment of the 1680 parcel at $1,691,800. Taxpayer appealed both BCA assessments to the director of property

valuation and review, and the appeal was heard by state appraiser John V. Morrisey. Hearings were held for both the 1506 parcel and the 1680 parcel on August 14, 2008 and August 28, 2008, respectively. With regard to inspection of the 1506 parcel, taxpayer allowed the state appraiser access only to a building attached to the main dwelling. With regard to the 1680 parcel, taxpayer allowed the state appraiser access to only the foyer and the basement. At the conclusion of the hearings, the state appraiser found that because 32 V.S.A. § 4467, which governs appeals from BCA decisions, requires the state appraiser to inspect the property prior to making a determination, and because taxpayer refused to allow a full interior inspection of either parcel, "it is not possible for the State Appraiser to make a determination as required by statute" and dismissed both appeals. Taxpayer requested the state appraiser to reconsider the dismissal of his appeal, and that request was denied.

¶ 4. On appeal, taxpayer argues that the state appraiser abused his discretion by dismissing the appeal for taxpayer's refusal to allow a full interior inspection of the two parcels. Taxpayer contends that because the statute requiring inspection by the state appraiser does not specify the extent of the inspection required, the limited inspection that the state appraiser was allowed was enough to satisfy the statute. Next, taxpayer contends that the doctrine of equitable estoppel should prevent the state appraiser from dismissing the appeal because the state appraiser "tacitly approved" a limited inspection. Taxpayer also argues that an ex parte communication between the town appraiser and the state appraiser unfairly prejudiced the state appraiser's decision. Finally, taxpayer argues that the state appraiser's failure to consider the other evidence offered by taxpayer, including independent appraisals of the fair market value of the two parcels,

violated taxpayer's equal protection rights.

¶ 5. On appeal to this Court, the decision by the state appraiser "will be deemed presumptively correct and its findings will be conclusive if they are supported by the evidence." *Lake Morey Inn Golf Resort, Ltd. P'ship v. Town of Fairlee*, 167 Vt. 245, 248, 704 A.2d 785, 787 (1997). Further, we will not set aside the state appraiser's findings of fact unless they are "clearly erroneous, in light of the fact that the appraiser has had the opportunity to judge the credibility of witnesses and weigh the evidence." *Barnett v. Town of Wolcott*, 2009 VT 32, ¶ 5, 185 Vt. 627, 970 A.2d 1281 (mem.). The burden is on the appellant to demonstrate that the state appraiser's exercise of discretion was clearly erroneous. *Lake Morey Inn*, 167 Vt. at 248, 704 A.2d at 787.

¶ 6. An aggrieved taxpayer may challenge the value attached to his property at several points. First, after a town's board of listers assembles its grand list of town property values, a person may challenge the final decision by appealing to the town's BCA. 32 V.S.A. § 4404(a). A hearing is then held before the BCA. *Id.* § 4404(b). The procedure for BCA review is as follows:

> Each property, the appraisal of which is being appealed, shall be inspected by a committee of not less than three members of the board who shall report to the board within 30 days from the hearing on the appeal and before the final decision pertaining to the property is given. If, after notice, the appellant refuses to allow an inspection of the property . . . including the interior and exterior of any structure on the property, the appeal shall be deemed withdrawn.

*Id.* § 4404(c).

¶ 7. The taxpayer then has the option of appealing the BCA decision to the direc-

tor of property valuation and review or to superior court. *Id.* § 4461(a). The director may assign the appeal to the state appraiser pursuant to § 4465. On appeal, the state appraiser "shall proceed de novo and determine the correct valuation of the property as promptly as practicable . . . . If the appeal is taken to the director, the appraiser shall inspect the property prior to making a determination." *Id.* § 4467.

¶ 8. If the taxpayer, town agent, or selectboard "claims that an appeal to the director is in any manner defective or was not lawfully taken," a timely objection may be filed with the director, who may dismiss the appeal if "required by law." *Id.* § 4463.

¶ 9. At the BCA appeal stage, the BCA acts as a "statutory factfinder which takes into consideration the view taken by a subcommittee along with all of the other evidence before it," including evidence derived from an inspection of the property in question. *Devoid v. Town of Middlebury*, 134 Vt. 69, 72, 350 A.2d 349, 351 (1975). Though § 4404(c) does not set forth precisely what the inspection entails, the plain meaning of the statutory language, together with the purpose of the statute, imply that an inspection entails a careful examination of the property, which would necessarily have to include an inspection of the interior of any dwelling. See *id.* at 72, 350 A.2d at 352 (incorporating a definition of "inspect" as "to view and examine officially") (quotation omitted). The importance of this careful inspection is borne out by the remedy for the BCA's failure to adhere to statutory requirements governing the inspection, which includes leaving the grand list value "at the amount set before the appealed change was made by the listers." 32 V.S.A. § 4404(c). Our decisions have upheld imposition of this remedy "when the inspection provision has not been strictly adhered to" by the BCA. *Villeneuve v. Town of Cambridge*, 148 Vt. 15, 16, 527 A.2d 659, 660 (1987) (upholding

state board of appraisers' decision to employ the § 4404(c) remedy of adhering to the appraised value established before the `appealed change was made by the listers when the inspection was conducted by only two committee members instead of the three required by statute); see also *City of Winooski v. Barnes*, 142 Vt. 27, 30, 451 A.2d 1140, 1141 (1982) (concluding that an inspection conducted by only two committee members "was patently defective under the statute, and the remedy of reinstating the old assessment was mandatory").

¶ 10. The absence of an adequate inspection by the state appraiser upon appeal of the BCA decision demands dismissal for the same reasons. If an adequate inspection is necessary for the BCA to make its decision, then the state appraiser, to make a "de novo" determination, must also be able to conduct an adequate inspection. The importance of the inspection to the valuation of the property is evidenced by the fact that it is a mandatory part of the state appraiser's determination. 32 V.S.A. § 4467 ("[T]he appraiser *shall* inspect the property prior to making a determination." (emphasis added)). Further, we have found that "[i]nherent in such an appeal is the presumption that the challenged appraisal is valid," and the "duty of overcoming this presumption of validity lies with the aggrieved taxpayer." *Manganelli v. Town of Proctor*, 144 Vt. 451, 453, 479 A.2d 155, 156 (1984). In the absence of an adequate inspection, there is simply no way that the taxpayer can present the evidence needed to extinguish this presumption.

¶ 11. Here, taxpayer steadfastly refused to allow first the town listers, then the BCA members, and finally the state appraiser into the dwellings on 1506 West Street and 1680 West Street to conduct adequate inspections of the interior of the premises. The limited "inspections" that taxpayer finally allowed the state appraiser to conduct were not enough to

provide the state appraiser with evidence sufficient to overcome the presumption in favor of the BCA's determination. At the 1506 parcel, taxpayer allowed the state appraiser to access only an attached building of the main dwelling and denied access to the interior of the main dwelling as well as the mobile home on the property. At the 1680 parcel, taxpayer allowed the state appraiser to access only the foyer and basement of what is an eighteen-room house. This limited access permitted no more than a cursory glimpse of the property in question and does not satisfy the plain meaning interpretation of "inspection." In the absence of an adequate inspection, neither the BCA nor the state appraiser had enough information upon which to make a decision assigning a new valuation to taxpayer's property. Though taxpayer may have had a change of heart after the state appraiser dismissed the appeals, we have to agree with the state appraiser that the offer to comply with the statutory requirements came too late. In addition, it is irrelevant that taxpayer submitted independent appraisals of the two properties, as these appraisals were also conducted without an adequate inspection. The information provided by taxpayer was simply not enough to overcome the presumption that the BCA's determination was correct.

¶ 12. Taxpayer also claims that the state appraiser should be estopped from dismissing taxpayer's appeals based on lack of a full interior inspection. To establish an estoppel claim, the party seeking estoppel must meet four elements: "(1) the party to be estopped must know the facts; (2) the party being estopped must intend that his conduct shall be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the conduct of the party to be estopped to his detriment." *In re Lyon*, 2005 VT 63, ¶ 17, 178 Vt. 232, 882 A.2d 1143 (citing

*Wesco, Inc. v. City of Montpelier*, 169 Vt. 520, 524, 739 A.2d 1241, 1244-45 (1999)). In *Lyon*, we also noted that a party "seeking to estop the government must demonstrate that the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case." *Id.* (quotation omitted). Here, taxpayer offers no evidence demonstrating that the state appraiser intended to induce reliance on the sufficiency of a limited inspection. Further, the statutes clearly require an inspection at both the BCA and state appraiser appeals, and neither the BCA nor the state appraiser is afforded discretion to ignore this requirement. Taxpayer was aware of the statutory requirements regarding an appeal of a tax decision, and he chose, nonetheless, to limit the inspection of his properties. Moreover, taxpayer fails to make out any "extraordinary circumstances" of the kind we found justified estopping a state agency in *Lyon*. See *id.* ¶ 23 (noting that in contrast to cases in which a state employee's actions resulted in detrimental reliance by a single party, estoppel was appropriate because an unknown number of permit applicants relied on representations made by multiple state employees).

¶ 13. Finally, taxpayer claims that the ex parte communication from the town appraiser to the state appraiser, in which the state appraiser was advised to dismiss taxpayer's appeals for lack of adequate inspections, unfairly prejudiced the state appraiser's decision. Though it was undoubtedly inappropriate for the town appraiser to communicate with the state appraiser while taxpayer's appeals were pending, the statutes requiring inspection are clear and do not allow the state appraiser any discretion to ignore this requirement. The result, therefore, is the same despite the improper way in which

the statutes' requirements were brought to the attention of the state appraiser. [*]

*Affirmed.*

---

[*] Because we find that a full inspection was a prerequisite to review by the state appraiser under 3t2 V.S.A. § 4467, we do not address taxpayer's equal protection claims.